**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TREVOR MCCARDLE,[1]
        Appellant,

      v.

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION,
        Agency.

DOCKET NUMBER
SF-0752-15-0230-I-1

DATE: January 6, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[2]

Cori M. Cohen, Esquire, Stephanie M. Herrera, Esquire and Holly V. Franson, Esquire, Silver Spring, Maryland, for the appellant.

---

[1] The Board took official notice that Mr. McCardle died on August 4, 2019, while the petition for review and cross petition for review were pending, and it issued a show cause order that invited the parties to file a motion for substitution. Petition for Review (PFR) File, Tab 26. In response to the show cause order, the appellant's attorney filed a motion for substitution, which requests that Yolanda Acuna, Mr. McCardle's sole beneficiary, be substituted in his place. PFR File, Tab 27. The motion includes a California death record from Lexis-Nexis, and a declaration made under penalty of perjury from Ms. Acuna. *Id.* at 7-9. If an appellant dies, the processing of an appeal will only be completed upon substitution of a proper party. 5 C.F.R. § 1201.35(a). Motions to substitute must be filed with the Board within 90 days after the death of a party except for good cause shown. 5 C.F.R. § 1201.35(b). The appellant's attorney filed the motion for substitution on March 24, 2022, which was more than 90 days after Mr. McCardle's death. However, in the absence of a timely substitution of a party, the processing of an appeal may continue if the interests of the proper party will not be prejudiced. 5 C.F.R. § 1201.35(c). No such prejudice exists here, and the agency has not opposed the motion; thus, we find it appropriate to continue with the processing of this appeal. Both Ms. Acuna and Mr. McCardle will be referred to as "the appellant."

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Neil C. Bonney, Esquire, Virginia Beach, Virginia, for the appellant.

Leroy T. Jenkins, Jr., Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1     The agency has filed a petition for review and the appellant has filed a cross petition for review of an initial decision that reversed the imposition of the indefinite suspension and found that the appellant did not prove his affirmative defenses of a Fourth Amendment violation and reprisal for whistleblowing and equal employment opportunity (EEO) activity.  Generally, we grant petitions such as these only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review.  Therefore, we DENY the petition for review and the cross petition for review.  We MODIFY the initial decision to clarify the grounds for reversing the suspension, to address the agency's argument regarding the appellant's pending U.S. district court case, and to supplement the administrative

judge's analysis of the reprisal claims. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision and REVERSE the suspension.

## BACKGROUND

¶2 The relevant background information, as recited in the initial decision, is generally undisputed. Initial Appeal File (IAF), Tab 74, Initial Decision (ID). On September 5, 2014, the appellant, a Paralegal Specialist, stated to a coworker that he was "going to fucking kill someone." ID at 1-2, 16. On September 19, 2014, the appellant sent an email to the entire agency in which he criticized his supervisors and the agency's processing of his EEO complaint, among other things. ID at 9; IAF, Tab 11 at 4-8. Management received complaints from the appellant's colleagues who expressed fear and concern regarding his hostile, intimidating, and disruptive behavior. ID at 16 (citing IAF, Tab 10 at 207-08). On September 23, 2014, a Federal Protective Service (FPS) officer inspected the appellant's office and discovered a box cutter in his backpack. ID at 16; IAF, Tab 10 at 207, 209. On September 29, 2014, the agency placed him on paid administrative leave to obtain a psychological/psychiatric evaluation. ID at 2. The administrative leave notice advised the appellant that the agency "must receive documentation from a qualified medical professional verifying that [his] presence in the workplace does not pose a danger to [himself] or others," and it included a medical questionnaire. ID at 2, 8 (emphasis omitted); IAF, Tab 9 at 63-66. The appellant did not provide any documentation to the agency in response to this notice. ID at 3.

¶3 On October 17, 2014, the agency proposed to indefinitely suspend the appellant. ID at 3. The proposal notice stated that the appellant had been instructed to obtain a psychological or psychiatric evaluation before he could return to duty and advised that the agency would not return him to duty "pending the results from a qualified medical professional that his presence in the

workplace does not pose a danger to [himself] or others." *Id.*; IAF, Tab 10 at 207-08.

¶4 The appellant submitted a November 17, 2014 letter from his treating psychiatrist, who stated, among other things, that the appellant "does not pose any threat to himself or others from his medical condition." ID at 3-4 (emphasis omitted). The agency determined that the information provided by the appellant failed to specifically address the questions in the medical questionnaire, and it indefinitely suspended him without pay, effective December 28, 2014, "pending a determination based on the results of the [m]edical [q]uestionnaire from a qualified psychologist/psychiatrist." ID at 4; IAF, Tab 5 at 21-24.

¶5 The appellant filed a Board appeal challenging the imposition of the indefinite suspension and requested a hearing. ID at 1.[3] The appellant later withdrew his hearing request. *Id.* The administrative judge did not sustain the indefinite suspension because he found that the appellant satisfied the condition subsequent for bringing the suspension to an end by submitting the November 17, 2014 document from his psychiatrist (a qualified medical professional), who stated that the appellant's presence in the workplace did not pose a danger to himself or others. ID at 5-7. The administrative judge alternatively found that, even if the agency proved the merits of the action, the action could not be

___

[3] The appellant filed a second Board appeal in April 2015, challenging the improper continuation of the indefinite suspension after the agency received, among other things, a second letter from his psychiatrist. The administrative judge did not sustain the agency's action, and both parties challenged the administrative judge's decision on review. *See McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-0752-14-0496-I-1. The agency subsequently removed the appellant and, after he appealed, the administrative judge sustained the agency's action. *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-0752-16-0689-I-3. The appellant also filed an individual right of action appeal in which the administrative judge denied his request for corrective action. *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-1221-17-0270-W-2. The appellant petitioned for review of those initial decisions. The Board issued a decision on December 7, 2022, in MSPB Docket No. SF-0752-16-0689-I-3 and will issue separate decisions in the other two appeals.

sustained on due process grounds because the agency failed to apprise the appellant that the indefinite suspension could be imposed without the completed medical questionnaire. ID at 8-9. The administrative judge further found that the appellant did not prove his affirmative defenses of a Fourth Amendment violation and reprisal. ID at 9-19.[4]

¶6    The agency has filed a petition for review, the appellant has filed a response, and the agency has filed a reply brief. Petition for Review (PFR) File, Tabs 3, 13-14. The appellant has filed a cross petition for review, the agency has filed a response, and, with the Board's permission, the appellant has filed a reply brief. PFR File, Tabs 15-16, 18, 20, 22.

### DISCUSSION OF ARGUMENTS ON REVIEW

¶7    In its petition for review, the agency argues that the administrative judge made the following mistakes: (1) he erroneously concluded that the appellant met the condition subsequent specified in the proposal notice; (2) he failed to address the preclusive effect of the appellant's subsequent U.S. district court matter; and (3) he erred when he found that the agency violated the appellant's due process rights. PFR File, Tab 3 at 4-6, 16-25. In his cross petition for review, the appellant asserts that the administrative judge wrongly decided his reprisal

---

[4] The appellant's claim of a Fourth Amendment violation involved the search of his office and discovery of the box cutter in his backpack. ID at 18-19. In the initial decision, the administrative judge noted that the Board has found that the exclusionary rule is inapplicable to situations where law enforcement officials seize evidence, and he found that FPS officers made the decision to search the appellant's office and backpack, the search was executed, and the items were returned to the appellant. *Id.* (citing *Delk v. Department of the Interior*, 57 M.S.P.R. 528 (1993). The appellant does not challenge the administrative judge's factual findings in this regard or the conclusion that he did not prove this claim. We affirm the administrative judge's analysis and conclusion herein. *See, e.g.*, *Fahrenbacher v. Department of Veterans Affairs*, 89 M.S.P.R. 260, ¶ 14 n.5 (2001) (noting that the exclusionary rule derived from the Fourth Amendment protection against unlawful search and seizure does not apply to administrative proceedings).

affirmative defenses and failed to address his disability discrimination claim. PFR File, Tab 15 at 14-33.

<u>The indefinite suspension must be reversed.</u>

¶8    The administrative judge made the following findings in the initial decision: (1) the only condition subsequent identified in the proposal notice was a statement from a qualified medical professional opining that the appellant's presence in the workplace did not pose a danger to himself or to others; (2) the November 17, 2014 statement from the appellant's treating psychiatrist satisfied this condition subsequent; and (3) the agency did not have a basis to impose the indefinite suspension.    ID at 5-7.    On review, neither party challenges the administrative judge's use of the "condition subsequent" analytical standard. However, we find its use awkward here because the administrative judge essentially found that the appellant satisfied the condition subsequent *prior* to the imposition of the indefinite suspension.

¶9    Instead, we find it appropriate to utilize the analytical standard described in *Moe v. Department of the Navy*, [119 M.S.P.R. 555](#) (2013), because of the similar circumstances and chronology.  The appellant in *Moe* was briefly hospitalized on June 3, 2011, because he was exhibiting odd behavior at work, and he was cleared by his personal psychiatrist to return to work without any restrictions on June 7, 2011.  *Id.*, ¶ 2.  On July 15, 2011, the agency ordered the appellant to report for a fitness-for-duty (FFD) psychiatric examination, and, based on the examining doctor's report, the agency placed him on paid administrative leave, proposed to suspend him indefinitely, and ordered him to submit to an independent psychological evaluation.  *Id.*, ¶¶ 3-4.  Ultimately, the appellant was indefinitely suspended on September 24, 2011, but the agency restored him to duty on November 7, 2011.  *Id.*, ¶¶ 4-6.

¶10    In *Moe*, the Board found, in pertinent part, that the agency did not have a sufficient objective basis for indefinitely suspending the appellant because, prior

to the decision to order him to take an FFD psychiatric evaluation, he had a medical release to return to work without restrictions, there were no other incidents upon his return to work, and his supervisor indicated that he had performed fully successful work and worked well with others during this period. *Id.*, ¶ 14.[5] Therefore, the Board reversed the indefinite suspension. *Id.*

¶11 Applying the legal standard described in *Moe*, rather than the "condition subsequent" framework set forth in the initial decision, we find that a different outcome is not warranted. We agree with the administrative judge's ultimate conclusion that the agency did not have a basis to impose the indefinite suspension because, prior to imposing the suspension, it had the November 17, 2014 documentation, which essentially indicated that the appellant was fit for duty. We therefore affirm the administrative judge's decision to reverse the indefinite suspension based on our finding that the agency failed to prove that it had a sufficient objective basis to suspend the appellant at the time it imposed the suspension.[6]

The appellant did not prove his affirmative defense of reprisal for whistleblowing disclosures or other protected activity under 5 U.S.C. § 2302(b)(8)-(9).

¶12 Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), a prohibited personnel practice affirmative defense asserted in a chapter 75 appeal that independently could form the basis of an individual right of action (IRA) appeal must be analyzed under the burden-shifting scheme set forth in 5 U.S.C.

---

[5] The Board in *Moe* also concluded that the agency did not have the authority to order the appellant to undergo an FFD evaluation because his Rigger Apprentice position did not have medical standards or physical requirements, nor was it part of an established medical evaluation program. *Moe*, 119 M.S.P.R. 555, ¶¶ 10-13. To the extent that the appellant argues on review that the agency's medical inquiries were improper, e.g., PFR File, Tab 15 at 20-24, Tab 22 at 4 n.1, we need not address this argument because we have reversed the indefinite suspension on other grounds.

[6] Because we affirm the administrative judge's decision to reverse the imposition of the indefinite suspension, we need not address the agency's arguments regarding the alternative due process analysis. PFR File, Tab 3 at 20-21.

§ 1221(e).  *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e), (i).  Prior to the WPEA, a covered employee could only bring an IRA appeal for personnel actions taken or proposed to be taken as a result of a prohibited personnel practice described in 5 U.S.C. § 2302(b)(8), concerning reprisal for whistleblowing disclosures.  *Alarid*, 122 M.S.P.R. 600, ¶ 12.  The WPEA expanded the grounds on which an IRA appeal may be filed with the Board.  *Id.*  Post-WPEA, an employee also may file an IRA appeal based on reprisal for certain other classes of protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D).  *Id.*

¶13    An appellant asserting such an affirmative defense of reprisal for whistleblowing or other protected activity must show, by preponderant evidence,[7] that he made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8) or engaged in protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D)[8] and the disclosure or protected activity was a contributing factor in the personnel action(s).  *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015); *Alarid*, 122 M.S.P.R. 600, ¶ 12; *see* 5 U.S.C. § 1221(e)(1).  If the appellant establishes a prima facie case of such reprisal, then the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action(s) absent any whistleblowing disclosure or protected activity.  *Ayers*, 123 M.S.P.R. 11, ¶ 12; *Alarid*, 122 M.S.P.R. 600, ¶ 12; *see* 5 U.S.C. § 1221(e)(2).

¶14    The appellant asserted below that his September 19, 2014 email, entitled "Help Needed–EEOC Los Angeles Legal Unit Under Poor Management," contained protected disclosures.  IAF, Tab 54 at 6.  The administrative judge determined that the email was related to his EEO matters, was covered by

---

[7] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

[8] Subsections 2302(b)(9)(B), (C), and (D) are not implicated by the facts of this appeal.

5 U.S.C. § 2302(b)(1) and (b)(9), and therefore was excluded from coverage under 5 U.S.C. § 2302(b)(8). ID at 9-11 (citing *Spruill v. Merit Systems Protection Board*, 978 F.2d 679 (Fed. Cir. 1992), and *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300 (2003)).[9] It is true that several of the appellant's allegations in the September 19, 2014 email appear to overlap with the allegations in his EEO matter. *Compare* IAF, Tab 11 at 4-8, *with* IAF, Tab 68 at 107-19. However, the administrative judge should have considered whether the appellant established reprisal for protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), which prohibits reprisal for the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation regarding remedying a violation of 5 U.S.C. § 2302(b)(8). 5 U.S.C. § 1221(a), (e); *see Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 7 (2014).[10] Because the administrative judge did not discuss the potential applicability of the WPEA, and section 2302(b)(9)(A)(i) in particular, we modify the initial decision to supplement his analysis of this claim.

¶15     To determine whether the appellant's September 19, 2014 email is activity protected by 5 U.S.C. § 2302(b)(9)(A)(i), we must determine if it constitutes the "exercise of any appeal, complaint, or grievance right." The Board has held that an employee's initial step toward taking legal action against an agency for a perceived violation of employment rights constitutes the exercise of any appeal,

---

[9] Relevant to this matter, before the enactment of the WPEA, 5 U.S.C. § 2302(b)(9) made it a prohibited personnel practice to retaliate against an employee or an applicant for employment "because of . . . the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." A claim of reprisal for such activity did not fall under the Board's IRA appeal jurisdiction. *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 7 (2014).

[10] Although the appellant did not explicitly assert below that this email constituted protected activity pursuant to 5 U.S.C. § 2302(b)(9)(A)(i), he argues in his cross petition for review that the administrative judge should have determined whether the statements in his email were covered by section "2302(b)(9)(A)." PFR File, Tab 15 at 28 n.10. We agree that he alleged sufficient facts below to warrant consideration of such a claim.

complaint, or grievance right. *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶¶ 11-18 (2016) (finding that an investigation by an agency's Administrative Investigation Board was outside of the procedures that fall within the protection of section 2302(b)(9)(A)(i)); *see also Von Kelsch v. Department of Labor*, 59 M.S.P.R. 503, 508-09 (1993) (concluding that the submission of a workers' compensation claim—in contrast to filing a Board appeal, an EEO complaint, an unfair labor practice complaint, or a grievance—did not constitute an initial step toward taking legal action against an employer for the perceived violation of an employee's rights), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224 (1998), *overruled by Ganski v. Department of the Interior*, 86 M.S.P.R. 32 (2000).[11] We find that the appellant's September 19, 2014 email, which he sent unsolicited to the entire agency and which chronicles his various complaints against the agency and certain agency officials, did not constitute an initial step toward taking legal action against the agency for the perceived violation of his rights. Accordingly, we find that the appellant's email did not constitute the "exercise of any appeal, complaint, or grievance right," and it is not protected under 5 U.S.C. § 2302(b)(9)(A)(i).

¶16      We now turn to whether the email contained disclosures protected by 5 U.S.C. § 2302(b)(8), which includes a disclosure of information by an employee that he reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. The proper test for determining if an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude

---

[11] Although *Von Kelsch* discussed pre-WPEA statutory provisions, the Board has noted that nothing in the WPEA altered its previous analysis concerning the meaning of the terms "appeal, complaint, or grievance" in the statutory language. *Graves*, 123 M.S.P.R. 434, ¶ 18.

that the actions evidenced one of the categories set forth in 5 U.S.C. § 2302(b)(8). *Linder*, 122 M.S.P.R. 14, ¶ 12.

¶17     The appellant contends that the allegations in his email contained disclosures unrelated to his discrimination claims, including that someone "doctored" his personnel records to make his 7-month detail to the enforcement unit look like a 90-day detail, the agency violated the Fair Labor Standards Act and its own time and attendance policies regarding overtime, and his second-level supervisor "engaged in the arbitrary and capricious exercise of power." PFR File, Tab 15 at 26-29. He further asserts that these allegations constitute disclosures involving a violation of laws, rules, and regulations, gross mismanagement, and an abuse of authority. *Id.* at 27-28. We agree with the appellant that his allegation of fraud or document tampering involving his personnel records constitutes a disclosure of a violation of law, rule, or regulation, and therefore it is protected under 5 U.S.C. § 2302(b)(8). *See, e.g.*, *DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999) (explaining that some allegations of wrongdoing, such as theft of Government property or fraudulent claims for pay, so obviously implicate a violation of law, rule, or regulation, that an appellant need not identify any specific law, rule, or regulation that was violated).[12]

¶18     To prove that a disclosure was a contributing factor in a personnel action, the appellant only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003). The knowledge/timing test allows an employee to demonstrate that

---

[12] We are not persuaded that the appellant had a reasonable belief that he was disclosing gross mismanagement in the September 19, 2014 email. *See White v. Department of the Air Force*, 63 M.S.P.R. 90, 95 (1994) (explaining that gross mismanagement means a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission). Because we find that he made a protected disclosure of a violation of law, rule, or regulation, we need not evaluate whether his disclosure involving time and attendance issues also was protected and/or whether he disclosed an abuse of authority.

the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*, ¶ 11; *see* 5 U.S.C. § 1221(e)(1).

¶19   The appellant has demonstrated that his email was a contributing factor in the agency's decision to impose the indefinite suspension. The knowledge element is satisfied because the email was sent to the entire agency and the deciding official specifically referenced the email in the decision letter. IAF, Tab 5 at 22. The timing element also is satisfied because the agency proposed and effected the indefinite suspension approximately 1 month and 3 months, respectively, after he sent the email. *See Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 12 (2008) (stating that a 2-3 month interval between the disclosure and personnel action is sufficiently brief that a reasonable person could conclude that the disclosure was a contributing factor). Having found that the appellant satisfied his prima facie burden, we must now evaluate whether the agency proved by clear and convincing evidence[13] that it would have imposed the indefinite suspension absent the September 19, 2014 email.

¶20   In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board typically will consider the strength of the agency's evidence in support of its action, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers or who did not engage in protected activity but who are

---

[13] Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e).

otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Alarid*, 122 M.S.P.R. 600, ¶ 14. Consistent with the guidance from the U.S. Court of Appeals for the Federal Circuit, we have considered all of the pertinent evidence. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1358 (Fed. Cir. 2012).

¶21        Our examination of the evidence relating to the *Carr* factors favors the appellant. For example, we have found that the agency did not have a sufficient objective basis to impose the indefinite suspension, *supra* ¶¶ 8-11, and, therefore, the first *Carr* factor favors the appellant. The *Carr* factor describing the existence and strength of the agency's motive to retaliate also favors the appellant because the email identified the proposing official by name and made several disparaging comments about agency officials and the agency's handling of his EEO matter and the deciding official specifically referenced the email in the decision letter. IAF, Tab 4 at 22, Tab 11 at 4-8; *see Whitmore*, 680 F.3d at 1370 ("Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees."). Finally, the parties agree that there is no evidence regarding the third *Carr* factor. PFR File, Tab 15 at 33, Tab 16 at 32. When the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018).

¶22        We find, however, that our analysis of the three *Carr* factors does not provide for adequate consideration of the unique contextual background that led to the agency's decision to impose the indefinite suspension. Because the Federal Circuit has held that the *Carr* factors are "nonexclusive," *Smith*, 930 F.3d at 1365, we have considered the totality of the circumstances. We find that the

agency proved by clear and convincing evidence that it would have imposed the indefinite suspension absent the September 19, 2014 email.

¶23    Indeed, the decision to impose the indefinite suspension was based on the appellant's pattern of unprofessional, erratic, and hostile behavior to management and his coworkers over a relatively short span of time. IAF, Tab 5 at 22, Tab 69 at 315-31 (deposition testimony of the deciding official). Significantly, on September 5, 2014, the appellant told one of his coworkers, K.J., that he was "going to fucking kill someone." IAF, Tab 8 at 272, Tab 69 at 317 (deposition testimony of the deciding official), 724 (deposition testimony of K.J.). The appellant separately stated to K.J. that he was frustrated with being "disrespected" and "bullied" by A.P. and S.N., and he said that if he could "take anybody out," it would be them. IAF, Tab 8 at 272, Tab 69 at 704, 720-24 (deposition testimony of K.J.). Additionally, the appellant became verbally combative during meetings, and disrespectful and unprofessional towards supervisors and coworkers. IAF, Tab 9 at 79-80; *see, e.g.*, *id.* at 201 (stating in a September 12, 2014 email to A.P., S.N., and his coworkers that he would be using sick leave for the rest of the day and telling A.P. and S.N. not to "burden [his] coworkers with extra work, under the false pretense that [he] left some of [his] unfinished"), 202 (stating in a September 16, 2014 email to A.P., S.N., and his coworkers that he was using sick leave and telling A.P. and S.N. "not [to] burden [his] coworkers with extra work"), Tab 50 at 30-31 (deposition testimony of N.A.) (stating that the appellant came into her office, closed the door, and told her that he had filed a grievance against the agency because he believed that he should have been selected for the attorney position that she occupied). K.J., himself a military veteran, and someone who considered himself a "friend" to the appellant, testified that he became increasingly concerned that the appellant's "frustration was building to a point to where [he was] no longer thinking

rationally" and he talked to A.P. about his concerns.[14] IAF, Tab 69 at 712-13, 719-20, 724, 740-41 (deposition testimony of K.J.); *see* IAF, Tab 50 at 71 (deposition testimony of S.N.) (stating that she "considered not parking where [she] normally park[ed] because of [the appellant's] bizarre behavior, his belligerence, [and his] open hostility," which also made her "look over [her] shoulder when [she walked] to [her] car at night").

¶24      Then, on September 19, 2014, the appellant sent the unsolicited agency-wide email, which was sent in violation of agency policies and which contained details about his personal grievances against various agency employees. IAF, Tab 11 at 4-8. As described in the decision letter and the testimony of the deciding official, as a result of this email, several of the appellant's coworkers "reported their concerns, fears, and anxiety over the content of [his] email as well as [his] recent erratic and disruptive behavior" and requested to be out of the office when the appellant was present. IAF, Tab 5 at 22, Tab 69 at 373-74 (deposition testimony of the deciding official); *see, e.g.*, IAF, Tab 69 at 248-49 (deposition testimony of A.P.) (stating that four female employees, N.A., L.W., R.W., and S.N., contacted her after the appellant sent the email, and describing these coworkers as "afraid or apprehensive," "highly agitated," "afraid," and "express[ing] apprehension and fear," respectively).[15] Taken together, the serious

---

[14] A.P. later became the proposing official. IAF, Tab 10 at 207-08.

[15] There appeared to be nearly universal concern in the appellant's work unit after he sent this email. For example, N.A. testified that the appellant's email was "alarm[ing]" because he called the legal unit a "little girl's club" and she was a petite woman, and other details in the email indicated to her that he was "at the end of [his] rope," he "seemed extremely desperate," and he "was out of options." IAF, Tab 50 at 31 (deposition testimony of N.A.). S.N. testified that the appellant's "manifesto" was "disturbing" and made her "afraid." *Id.* at 71 (deposition testimony of S.N.). A.P. testified that she was "concerned" by the email because of how it affected her staff and she was also concerned that the appellant seemed "helpless." IAF, Tab 69 at 243-44 (deposition testimony of A.P.). R.W. testified that the appellant's demeanor earlier that day coupled with the agency-wide email made her "afraid." *Id.* at 639-43 (deposition testimony of R.W.). K.J. also testified that the email "solidified" his concerns about the appellant. *Id.* at 741 (deposition testimony of K.J.). Finally, L.W.

nature of these allegations and the fear and concerns expressed by numerous employees in the appellant's work unit regarding the appellant's behavior and actions justifies the agency's concern about the appellant's continued presence in the workplace, notwithstanding the flawed execution of its action.[16]  We are left with a firm belief that the agency would have indefinitely suspended the appellant absent the September 19, 2014 email.[17]

¶25     For the first time on review, the appellant asserts that a January 2, 2014 email sent by an agency administrative judge to the Inspector General "on [his] behalf" constituted "protected whistleblowing activity."  PFR File, Tab 15 at 13 n.3, 27.  The appellant did not specifically identify this correspondence as part of his whistleblowing reprisal claim in his prehearing submission or closing brief below, IAF, Tabs 54, 69, and we could not independently find this correspondence in the record.  The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence.  *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).  The appellant has not met this burden, and we will not further consider this argument on review.

The appellant did not prove his affirmative defense of reprisal for EEO activity.

¶26     In his analysis of the claim of reprisal for EEO activity, the administrative judge only discussed the appellant's July 12, 2013 formal EEO complaint, in

---

testified that she was "uncomfortable" and "overwhelmed" because of the conflict in the office.  *Id.* at 779-80 (deposition testimony of L.W.).

[16] Importantly, the deciding official testified that she considered the fact that FPS found a box cutter in the appellant's possession at work, but it was not critical to her decision because the appellant's explanation, that he may need it for his bicycle, "made some sense" and was "a legitimate reason."  IAF, Tab 69 at 363-67 (deposition testimony of the deciding official).  Likewise, we accord the discovery of the box cutter little weight in our analysis.

[17] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

which he alleged that he was a victim of harassment based on race and sex discrimination and reprisal for participating in a mediation with his supervisors. IAF, Tab 11 at 4-8, Tab 68 at 107-19; ID at 11-18.  The administrative judge determined that the appellant failed to present any direct evidence to support his contention that his EEO complaint was a motivating factor in the agency's decision, he did not show a "convincing mosaic" of reprisal, and he did not provide comparator evidence or other circumstantial evidence of pretext. ID at 11-18 (discussing *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 36-37, 41-42, 48-49, 51 (2015), *overruled on other grounds by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶ 25).

¶27     On review, the appellant acknowledges that the administrative judge "correctly articulated the 'motivating factor' standard applicable to retaliation claims before the Board," but he asserts that the administrative judge disregarded evidence and erred in his analysis of this standard.  PFR File, Tab 15 at 24-26. We modify the initial decision to clarify the proper analytical framework and to supplement the administrative judge's analysis of this claim.

¶28     Since the initial decision was issued, the Board has clarified that *Savage* does not require administrative judges to separate direct from circumstantial evidence or to require appellants to demonstrate a convincing mosaic to support a retaliation claim.  *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 29-30 (2016), *clarified by Pridgen*, 2022 MSPB 31, ¶¶ 23-24.  Rather, in *Gardner*, the Board reiterated that the dispositive inquiry was whether the appellant proved by preponderant evidence that the prior EEO activity was a motivating factor in the contested personnel action.  *Id.*, ¶ 30.

¶29     Because the deciding official mentioned his EEO complaint in the decision letter, IAF, Tab 4 at 22, we find that his complaint was a motivating factor in the agency's decision to impose the indefinite suspension, *Gardner*, 123 M.S.P.R. 647, ¶ 30; *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶30     Now we turn to the next part of our analysis. Title VII of the Civil Rights Act of 1964, as amended, requires that such actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). As noted above, the appellant may prove an affirmative defense under this subsection by showing that prohibited discrimination or reprisal was a motivating factor in the contested personnel action, meaning that discrimination or reprisal played "any part" in the agency's action. *Pridgen*, 2022 MSPB 31, ¶ 21. In *Pridgen*, the Board clarified that an appellant who proves motivating factor and nothing more may be entitled to injunctive or other "forward-looking relief," but to obtain the full measure of relief under the statute, including status quo ante relief, compensatory damages, or other forms of relief related to the end result employment decision, he must show that discrimination or reprisal was a "but-for" cause of the action. *Id.*, ¶¶ 20-22 (citing *Babb v. Wilkie*, 140 S. Ct. 1168, 1171, 1177-78 (2020)).

¶31     The U.S. Supreme Court has explained that "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1739 (2020). Here, if we eliminate the agency's consideration of the appellant's EEO complaint, it is apparent that the agency would have indefinitely suspended the appellant because of, among other things, his statement that he wanted to kill someone and the concerns and fear expressed by his supervisors and coworkers regarding his erratic and increasingly hostile behavior towards them. Because we find that the outcome would be the same without considering his prior EEO complaint, we further conclude that the appellant has failed to prove that his EEO complaint was a but-for cause of the indefinite suspension.[18]

---

[18] The administrative judge noted in the initial decision that the Standard Form 50 effecting the indefinite suspension indicated that the reason for the suspension was "pending results of investigation," and he discussed the agency's subsequent investigation of potential misconduct by the appellant, which ultimately led to his removal. ID at 13-18; IAF, Tab 5 at 19. We do not consider any subsequent

¶32    The appellant asserted below that his September 19, 2014 email, discussed above, was also "protected under EEO . . . laws," IAF, Tab 54 at 6, and he appears to reassert this claim on review, PFR File, Tab 15 at 25. We further modify the initial decision to consider this email as protected EEO activity.

¶33    On review, the appellant asserts that the administrative judge failed to mention that the deciding official testified in her deposition that the email was the "tipping point" in her decision to suspend him. PFR File, Tab 15 at 9-10, 25; IAF, Tab 69 at 374-75. This argument is not persuasive because it is based on a misunderstanding of the deciding official's testimony. The deciding official testified that "some employees got concerned" after reading the appellant's email, and she affirmed that the "fact of their concern" was a basis for her decision. IAF, Tab 69 at 373-74 (deposition testimony of the deciding official). She explained that the email "sort of highlighted or sort of set in motion or brought to the forefront the fact that people were concerned." *Id.* at 374 (deposition testimony of the deciding official). The deciding official further explained that the email "tipped the scale and made people more concerned" because "people [who] were concerned or [who] may have not been quite as concerned about some of the things he said until the email, which made them think back on some of the things he had said." *Id.* at 374-75 (deposition testimony of the deciding official). The deciding official emphasized that some of the appellant's female coworkers were so concerned after reading the email that they requested to go home. *Id.* at 375-77 (deposition testimony of the deciding official). Thus, the deciding official's testimony, in context, reveals that the email itself was not the tipping point; rather, it was the concern and/or fear

---

investigation because the deciding official testified in her deposition that she did not learn of this investigation until approximately June 2015, nearly 6 months after the indefinite suspension was imposed, IAF, Tab 69 at 527-29 (deposition testimony of the deciding official), and therefore, the investigation does not appear to have been a factor in the agency's decision to impose the suspension.

expressed by other agency employees after reading the appellant's email that was the tipping point in her decision to suspend the appellant.

¶34    We find, however, that the reference in the decision letter to the September 19, 2014 email and the negative effect that it caused in the workplace satisfies the appellant's burden to show that the email was a motivating factor in the agency's decision to indefinitely suspend him.  *See, e.g.*, *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 22 (2013) (finding that the deciding official's statements regarding the effect of the appellant's inability to fulfill his duties on the efficiency of the organization constituted evidence of a discriminatory motive), *overruled on other grounds by Pridgen*, 2022 MSPB 31, ¶ 47.  However, for the reasons described above, we find that the appellant failed to prove that his EEO activity was a but-for cause of the indefinite suspension.[19]

We supplement the initial decision to address the agency's assertion regarding the appellant's U.S. district court complaint, but a different outcome is not warranted.

¶35    On review, the agency asserts that it is being forced to litigate identical claims in two separate legal fora based on the appellant's decision to file a complaint in U.S. district court in August 2015, seven months after he filed this appeal.  PFR File, Tab 3 at 21-25 (discussing *Williams v. Equal Employment Opportunity Commission*, 75 M.S.P.R. 144 (1997)).  This argument is unavailing.  In *Williams*, the Board "[a]ssum[ed]" that under some circumstances it would be appropriate to dismiss an appeal because of a later-filed Title VII action in district court.  *Williams*, 75 M.S.P.R. at 149.  Without identifying the circumstances when it would be appropriate, the Board in *Williams* concluded

---

[19] If the appellant wishes to pursue any "injunctive or other forward-looking relief" he believes the Board may be authorized to order because we have found that he proved by preponderant evidence that his EEO activity was a motivating factor in the agency's decision, *Babb*, 140 S. Ct. at 1178, he should file a request with the Western Regional Office.

that such circumstances were not present in that matter. *Id.* The Board's decision in *Williams*, therefore, provides little guidance.

¶36 We have reviewed the appellant's pro se district court complaint and his two amended complaints, which involve claims of employment discrimination, due process violations, and defamation. IAF, Tab 48; PFR File, Tab 14 at 14-153. Based on our review of these submissions, it appears that the appellant is asserting that the indefinite suspension is one of several agency actions that supports his hostile work environment claim, but it does not appear that he is specifically pursuing a claim involving his indefinite suspension in the district court matter. In fact, he specifically informed the court in his original complaint that "[t]he MSPB is adjudicating [his] unlawful[]suspension claims." IAF, Tab 48 at 15. Moreover, in a footnote in the first and second amended complaints, the appellant advised the district court of the initial decision in this matter and stated that the "illegal suspension and related claims are not within [the] court's jurisdiction." PFR File, Tab 14 at 69, 139. Additionally, the U.S. District Court for the Central District of California issued a decision granting the agency's motion for summary judgment on claims involving the Equal Pay Act and claims that the appellant's various nonselections were based on discrimination and/or retaliation. *McCardle v. Yang*, No. CV 15–6236 DSP (Ex), 2017 WL 2312998, at *1-*7 (C.D. Cal. May 25, 2017), *aff'd sub nom. McCardle v. Lipnic*, 738 F. App'x 464 (9th Cir. 2018). The court of appeals, in its decision, affirmed the district court's decision to dismiss for failure to state a claim the appellant's due process, hostile work environment, retaliation, and defamation claims. *McCardle*, 738 F. App'x at 464. There is no indication in either of these decisions that the indefinite suspension was before the court. In the absence of any persuasive evidence that the appellant was attempting to relitigate his indefinite suspension appeal before the court, it is not appropriate to dismiss this matter.

<u>We do not consider the appellant's claim of disability discrimination because he did not raise it below or show that it is based on new and material evidence that was not previously available despite his due diligence.</u>

¶37    In his Order and Summary of Conference Call, the administrative judge noted that the appellant raised defenses of reprisal, a due process violation, and a violation of the Fourth Amendment. IAF, Tab 66 at 2. The administrative judge also stated that the appellant "confirmed that he is not pursuing any other affirmative defense claims and/or confirmed that he is withdrawing any affirmative defense and/or other claims not specifically identified above." *Id.* at 4. The administrative judge therefore concluded that, "[w]ith regard to other affirmative defenses **not** raised in this appeal, the affirmative defenses not specifically memorialized above will **not** be further addressed by the Board absent a specific timely motion requesting otherwise followed by an order." *Id.* (emphasis in original). The appellant, who was represented by counsel, did not challenge the administrative judge's rulings at any time below, including in his closing brief, nor did he otherwise indicate that he was raising a claim of disability discrimination. Because the appellant has not shown that this argument is based on new and material evidence that was not available before the record closed below, *Banks*, 4 M.S.P.R. at 271, we do not consider this claim on review, *Ronso v. Department of the Navy*, [122 M.S.P.R. 391](#), ¶ 3 n.1 (2015); *Burge v. Department of the Air Force*, [82 M.S.P.R. 75](#), ¶ 31 (1999).

¶38    We have considered the appellant's assertion that the Board should consider his disability discrimination claim on its own motion. PFR File, Tab 15 at 16 (citing *Mitchell v. Department of the Navy*, [6 M.S.P.R. 364](#) (1981)). In *Mitchell*, 6 M.S.P.R. at 365, the Board stated that it was "more amenable to considering allegations of discrimination prohibited by statute raised for the first time in a petition for review than other allegations of error." Here, however, we are not persuaded that *Mitchell* warrants a different outcome. There is no mention that the appellant in *Mitchell* was represented by counsel before the administrative

judge. By contrast, the appellant was represented by counsel below, and he is responsible for the errors of his chosen representative. *Sofio v. Internal Revenue Service*, 7 M.S.P.R. 667, 670 (1981).

¶39 We have considered the parties' remaining arguments, but we find that they are unavailing.

## ORDER

¶40 We ORDER the agency to rescind the indefinite suspension and to restore the appellant effective December 28, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶41 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶42 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶43 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not

fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶44      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60‑day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.  The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.

**NOTICE OF APPEAL RIGHTS**[20]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[20] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.    5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).   If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[21] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[21] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                                   /s/ for
                                                 _____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.